UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | | |
|---|---|---|
| **KERRY ELLIOTT,** | ) | Case No. 3:11-cv-00909-SI |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

James S. Coon, Swanson, Thomas, Coon & Newton, The Thomas Mann Building, 820 S.W. Second Avenue, Suite 200, Portland, OR 97204. Attorneys for Plaintiff.

S. Amanda Marshall, United States Attorney, and Adrian L. Brown, Assistant United States Attorney, United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204-2902; Nancy A. Mishalanie, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104-7075. Attorneys for Defendant.

SIMON, District Judge.

Ms. Kerry L. Elliott seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income. Because the Commissioner concedes that the ALJ erroneously relied on the testimony of a vocational expert, the Commissioner's decision is reversed and this case is remanded for further proceedings pursuant to 42 U.S.C. § 405(g), sentence four.

## I.   BACKGROUND

### A.   The Application

Ms. Elliott protectively filed an application for Supplemental Security Income ("SSI") on February 5, 2007, alleging disability beginning January 1, 2000. Tr. 11, 29. She alleged disability due to post-traumatic stress disorder ("PTSD"), major depression, panic disorder with agoraphobia, borderline intellectual functioning, chronic pain, and tachycardia. Tr. 166. The Commissioner denied her application initially and on reconsideration; thereafter, she requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 86–100. After an administrative hearing, held November 10, 2009, and a supplemental hearing, held February 18, 2010, the ALJ found Ms. Elliott to be not disabled. Tr. 19, 25–83. The Appeals Council denied Ms. Elliott's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1–3. Ms. Elliott now seeks judicial review of that decision.

### B.   The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

OPINION AND ORDER, Page 2

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.,* 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§ 404.1520 (DIB); 20 C.F.R. § 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). The five-step

sequential process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R.
    §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving
    significant mental or physical duties done or intended to be done for pay
    or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing
    such work, she is not disabled within the meaning of the Act. 20 C.F.R.
    §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing
    substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's
    regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). An
    impairment is "severe" if it significantly limits the claimant's physical or
    mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a);
    416.921(a). This impairment must have lasted or must be expected to last
    for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509;
    416.909. If the claimant does not have a severe impairment, the analysis
    ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant
    has a severe impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the
    impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,
    then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii);
    416.920(a)(4)(iii). If the impairment does not meet or equal one or more of
    the listed impairments, the analysis proceeds beyond step three. At that
    point, the ALJ must evaluate medical and other relevant evidence to assess
    and determine the claimant's "residual functional capacity" ("RFC"). This
    is an assessment of work-related activities that the claimant may still
    perform on a regular and continuing basis, despite any limitations imposed
    by his or her impairments. 20 C.F.R. §§ 404.1520(e); 416.920(e). After the
    ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.  Can the claimant perform his or her "past relevant work" with this RFC
    assessment? If so, then the claimant is not disabled. 20 C.F.R.

§§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert,* 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett,* 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante,* 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.    The ALJ's Decision

The ALJ applied the sequential process in her March 25, 2010 decision. Tr. 8–24. At step one, the ALJ found that Ms. Elliott had not engaged in substantial gainful activity since February 5, 2007, the application date. Tr. 13. At step two, the ALJ found that Ms. Elliott's personality disorder, affective disorder, anxiety disorder, and history of substance abuse were severe impairments. *Id.* At step three, the ALJ found that Ms. Elliott does not have an

OPINION AND ORDER, Page 4

impairment or combination of impairments that meets or equals one of the specific impairments listed in the regulations. *Id.*

The ALJ then determined that Ms. Elliott has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following limitations: only simple, routine, repetitive tasks; minimal social interaction; and a low level of pressure. Tr. 14. In reaching this conclusion, the ALJ considered Ms. Elliott's statements, but found that they were not fully credible. Tr. 15–17. In addition, the ALJ examined the lay testimony of Ms. Elliott's mother, Diane Walsh, but found that it was not credible for similar reasons. Tr. 18. The ALJ gave significant weight to the opinions of Drs. Hennings and Anderson, who provided consultative opinions for the state agency. Tr. 17. The ALJ, however, gave little weight to the opinion of Robert Basham, Ph.D., because his evaluation of Ms. Elliott's functionality was inconsistent with his relatively normal objective findings. *Id.* Similarly, the ALJ gave little weight to the opinions of Dr. Behle, a treating physician, and Ms. McAlexander, a psychiatric and mental health nurse practitioner ("PMHNP"). *Id.*

At step four, the ALJ found that Ms. Elliott had no past relevant work. Tr. 18. Therefore, the ALJ called a vocational expert ("VE") to testify at the supplemental hearing. Tr. 51–54. The ALJ asked the VE to consider a hypothetical claimant with restrictions similar to those formulated in Ms. Elliott's RFC; the VE responded that a person with those restrictions would be able to perform the work of a hand packer, a paper sorter or recycler, and a produce sorter. Tr. 52–54. Where the hypothetical claimant had anxiety and memory problems such that she would miss more than two days of work per month, the VE confirmed that she would be unable to sustain competitive employment. Tr. 55.

OPINION AND ORDER, Page 5

Based on the VE's testimony, the ALJ found that Ms. Elliott was capable of performing "jobs that exist in significant numbers in the national economy." Tr. 18. The ALJ therefore concluded that Ms. Elliott was not disabled. Tr. 19.

## II.    STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.,* 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this court may not substitute its judgment for that of the Commissioner. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). The reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Orn,* 495 F.3d at 630; *see also Bray,* 554 F.3d at 1226-26 (citing *SEC v. Chenery Corp.,* 332 U.S. 194, 196 (1947)).

OPINION AND ORDER, Page 6

## III.    DISCUSSION

Ms. Elliott argues that the ALJ erred by:  (1) relying upon unexplained VE testimony that was inconsistent with the Dictionary of Occupational Titles ("DOT"); (2) discrediting Plaintiff's credibility, specifically her subjective symptom testimony; (3) rejecting Plaintiff's lay witness testimony; and (4) rejecting the medical opinions of Dr. Behle and Ms. McAlexander. The Commissioner concedes that it was error for the ALJ to rely on the testimony of the VE and urges the Court to remand the case for further proceedings.

### A.    VE Testimony

The Commissioner concedes that the ALJ erroneously relied on VE testimony that was in conflict with the DOT and was given without an adequate explanation of that conflict. Def.'s Mot. at 4–5; *see also* SSR 00-4p, *available at* 2000 WL 1898704 (requiring the ALJ to "elicit a reasonable explanation" for any apparent conflict between the DOT and the VE's testimony). Thus, the ALJ's finding at step five in reliance on the VE's testimony was not based on substantial evidence and is therefore erroneous. The case will be remanded. In the interest of efficiency, the court will also rule on Ms. Elliott's other assignments of error.

### B.    Plaintiff's Credibility

Ms. Elliott argues that the ALJ discredited her testimony without providing clear and convincing reasons for doing so. Pl.'s Br. at 13–23. The Ninth Circuit has developed a two-step process for evaluating the credibility of a claimant's testimony about the severity and limiting effect of his or her symptoms. *See Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other

symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). Second, "if the claimant meets the first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so .'" *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

During the hearing, Ms. Elliott testified to agoraphobia-triggered panic attacks that prevent her from leaving her residence. Specifically, she explained that she cannot leave the van that she lives in and at least once a week, but as often as every other day, she suffers debilitating panic attacks. Tr. 41–45, 70. She has had limited success with medications, including antidepressants and antipsychotics. Tr. 31–32, 71–72. As a result of these symptoms, Ms. Elliott stated that she can only shop alone ten percent of the time and that she cannot use public transportation. Tr. 37, 43. In addition, she testified to memory problems and a need for excessive sleep. Tr. 45–46, 70.

The ALJ, applying the first step of the credibility framework, found "that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." Tr. 15. In applying the second step, however, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC]." *Id.* In support of this conclusion, the ALJ offered four specific reasons: (1) the disparity between Ms. Elliott's testimony and the objective medical evidence; (2) her inconsistent activities of daily living;

OPINION AND ORDER, Page 8

(3) her work history prior to the alleged onset date; and (4) her inconsistent statements. Tr. 15-17.

As an initial matter, Ms. Elliott argues that the ALJ impermissibly formulated the RFC first and then used it as a basis to discredit her subjective testimony. Pl.'s Br. at 13–15. The ALJ prefaced her credibility finding with the statement: "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC]." Tr. 15. To the extent that this recitation is offered as a reason in support of the ALJ's credibility finding, it is neither clear and convincing nor supported by substantial evidence. *See Allen v. Astrue*, 6:11-CV-06167-SI, 2012 WL 2921454, at *8 (D. Or. July 17, 2012). The statement, however, is followed by four additional reasons, and in this context the ALJ's use of such boilerplate language serves merely to introduce the discussion of four specific reasons for the ALJ's credibility determination. *See* Tr. 15–17. Further, even if the use of this boilerplate language were error, in the context of the ALJ's more specific discussion that followed, it is harmless. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (a court may affirm an ALJ's credibility finding if it is based on "substantial evidence," even if some of the ALJ's reasons are erroneous). The court will now turn to address the specific reasons offered in support of the ALJ's credibility finding.

### 1. Objective Medical Evidence

The ALJ found that Ms. Elliott's complaints regarding the severity of her symptoms were inconsistent with the objective medical evidence because she: (1) only intermittently complained of symptoms; (2) the medical record contained few objective findings; and (3) she received conservative medical treatment. Tr. 15.

An ALJ is entitled to make an adverse credibility finding where the claimant fails to or inconsistently reports symptoms during a relevant time period. *See Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). Here, the ALJ cites the "paucity of evidence" demonstrating Ms. Elliott's psychiatric abnormalities. Tr. 15. A review of the records cited by the ALJ, however, reveals the opposite. *See, e.g.*, Tr. 431 (Ms. Elliott's anxiety is referenced during a visit for a suspected heart attack), Tr. 447 (Ms. Elliott is referred to a therapist), Tr. 483–89 (psychiatric conditions are referred to in two separate office visits), Tr. 524–531 (psychiatric conditions are referred to during three separate office visits). Further, some of the records relied on by the ALJ are not medical records, but rather "interim notes," which do not reflect any medical information derived from a patient's visit; for example, the records note phone calls reminding Ms. Elliott of appointments. *See, e.g.*, Tr. 431–32, 436–37, 484–87, 448–53. Finally, the ALJ cites medical records from events where it would not be expected that Ms. Elliott would report her psychiatric symptoms, including visits for prenatal and gynecological care, emergency services, and consultative exams for her tachycardia. *See, e.g.*, Tr. 433–34, 437–38, 457, 487–88. As a whole, the evidence relied on by the ALJ is unpersuasive because at most it demonstrates a selective reading of the record. Indeed, where appropriate, Ms. Elliott or her physician almost always noted a complaint or symptom of a psychiatric abnormality.

In addition, a lack of objective medical evidence, standing alone, may not serve as a clear and convincing reason to discredit the claimant's credibility when the ALJ has already determined that the claimant's impairments could produce some of the symptoms alleged. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Thus, without more, this is not a clear and convincing reason to discredit Ms. Elliott's testimony regarding the severity of her symptoms.

OPINION AND ORDER, Page 10

Further, as discussed throughout this opinion, there are substantial objective findings that support Ms. Elliott's testimony. *See supra* pp. 8–9; *infra* pp. 18–22.

Finally, a claimant's testimony regarding the severity of an impairment may be discounted if there is evidence that the impairment was conservatively treated. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)). Here, however, neither the ALJ nor Ms. Elliott's medical providers have identified any alternative courses of treatment that may have better treated her symptoms. Indeed, Ms. Elliott was prescribed numerous psychotropic medications in an effort to control her symptoms. *E.g.* Tr. 425 (fluoxetine for depression and propranolol for anxiety); Tr. 684 (haloperidol for agoraphobia and hydroxyzine for anxiety); Tr. 688 (records indicating Ms. Elliott was taking three different medications for her psychiatric disorders); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The record also shows that Ms. Elliott has received therapeutic counseling in addition to her medication. *See generally* Tr. 269–285, 683–695.

Thus, the reasons relating to the objective medical evidence offered in support of the ALJ's finding  that Plaintiff is not credible are not supported by substantial evidence in the record.

### 2.    Activities of Daily Living

The ALJ acknowledged that Ms. Elliott "does not perform many daily activities"; however, she ascribed this to Ms. Elliott's "current living situation," rather than to any mental impairment. Tr. 16. Relying on Ms. Elliott's testimony about her daily activities before she was homeless, the ALJ found that she cooked, cleaned, and shopped for groceries. *Id.* Further, the ALJ found that Ms. Elliott walked three blocks to attend the hearing. *Id.* Daily activities can

OPINION AND ORDER, Page 11

form the basis of an adverse credibility finding where the claimant's activities either contradict his or her other testimony or meet the threshold for transferable work skills. *See Orn*, 495 F.3d at 639. A claimant, however, need not be utterly incapacitated to receive disability benefits, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick*, 157 F.3d at 722–23 (requiring the level of activity to be inconsistent with the claimant's claimed limitations to be relevant to his or her credibility).

As a whole, Ms. Elliott's prior activities of daily living are not inconsistent with the functional limitations she testified to at the hearings brought about by panic attacks induced by agoraphobia. Two of the activities, cooking and cleaning, were performed wholly within her own apartment. Moreover, read in context, Ms. Elliott testified that she only went grocery shopping when she had someone to accompany her. Tr. 77. Similarly, Ms. Elliott's ability to walk "two, three blocks" to the hearing is neither inconsistent with her other testimony nor is it a transferrable work skill. Tr. 63.

The ALJ also cited to Ms. Elliott's medical records from 2005, where she reported to Drs. Bentham and Tamarappoo that she could perform most activities of daily living. Tr. 16. It is, however, a mischaracterization to say that Ms. Elliott told Dr. Betham that she could "perform most activities of daily living." Tr. 17, 245–46. In fact, she reported activities similar to those that she testified about at the hearing—cooking, cleaning, and grocery shopping—and any additional activities—watching television and reading—are activities that she performed wholly within her apartment. *Id.* Finally, Ms. Elliott's report to Dr. Tamarappoo, a cardiologist, that she could perform "most activities of daily living" is not specific evidence sufficient to discount her

OPINION AND ORDER, Page 12

credibility, particularly because it is so vague. *See Orn*, 495 F.3d at 639 (activities must make up a "substantial part" of claimant's day); *Vertigan*, 260 F.3d at 1050 (The "mere fact that a plaintiff has carried on *certain* daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.") (emphasis added).

Thus, the reasons relating to Ms. Elliott's activities of daily living offered in support of the ALJ's finding that Plaintiff is not credible are not supported by substantial evidence in the record.

### 3.    Work History

The ALJ also found Ms. Elliott to be not credible because she had engaged in "little to no work" prior to her alleged onset date, which the ALJ believed indicated that Ms. Elliott's unemployment was attributable to a cause other than her alleged limitations. Tr. 16. It is permissible for an ALJ to use a claimant's limited work history to make an adverse credibility determination; however, the parties do not cite to, and the Court is not aware of, any cases where this reason alone has constituted substantial evidence. *See, e.g.*, *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (substantial evidence included a limited work history, contradictory activities of daily living, and contradictory statements); *Crosby v. Comm'r of Soc. Sec. Admin.*, 11-16193, 2012 WL 2917029, at *1 (9th Cir. July 18, 2012) (substantial evidence included evidence of conservative treatment, a minimal work history, and an unexplained failure to follow medical advice).

Even if this were substantial evidence in the record, it is not a clear and convincing reason. Indeed, Ms. Elliott offered reasonable explanations for the loss of each of her prior jobs,

OPINION AND ORDER, Page 13

which the ALJ does not address. *See Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1298 (9th Cir. 1999) (error for the ALJ to speculate as to reasons for the claimant's behavior without pointing to specific evidence, particularly where evidence supporting the opposite conclusion is in the record). *Cf. Thomas*, 278 F.3d at 959 (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir.1991) (en banc)) ("[T]he ALJ must make a credibility determination with findings *sufficiently specific* to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.") (emphasis added). Ms. Elliott explained that she was terminated from her job as an elderly caretaker because she could not follow instructions; she left her job at Fred Meyer because she became pregnant; she was terminated from her job as a barista because the business closed; and she was terminated from her job at an animal hospital because she was too slow. Tr. 66–68. As the evidence tends to demonstrate, Ms. Elliott left or was terminated from her prior positions either through no fault of her own or through work problems reasonably related to her alleged disabilities.

Thus, the reasons relating to Ms. Elliott's work history offered in support of the ALJ's finding  that Plaintiff is not credible are not supported by substantial evidence in the record.

### 4.     Inconsistent Statements

Finally, the ALJ found that Ms. Elliott's inconsistent statements "create[d] significant credibility concerns." Tr. 16. At the supplemental hearing, Ms. Elliott testified that her symptoms precluded her from leaving her van "almost every day"; however, she also testified to engaging in various activities that take place outside of her van. Tr. 45. Literally read, Ms. Elliott's statements are a contradiction; however, reasonably read, the statements are not. *Cf. Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir.

OPINION AND ORDER, Page 14

1989)) (holding a court may not substitute its own judgment where the ALJ's determination is reasonable and supported by substantial evidence). Consideration of Ms. Elliott's statements in context reveals that the activities she engaged in outside of her van were not frolics, but rather excursions necessary to support a minimal standard of living. Tr. 44–46. For example, Ms. Elliott testified that she left the van to use the restroom, to shower on occasion at a friend's house, to visit her doctor or counselor, and to obtain food when accompanied by a companion. *Id.* Thus, these contradictions are insignificant and do not bear on Ms. Elliott's credibility.

The ALJ's reference to inconsistencies in Ms. Elliott's testimony between the two hearings is also unpersuasive because the purported inconsistencies are either nonexistent or fail to cast doubt on her credibility. The ALJ misreads the record with respect to Ms. Elliott's testimony regarding grocery shopping and prior cocaine use. *Compare* Tr. 77 (testifying she only eats prepared food purchased in the company of her ex-boyfriend) *with* Tr. 36, 42–43 (testifying she "sometimes" goes shopping and eats prepared food); *Compare* Tr. 75 (originally denying, then immediately admitting to prior cocaine use); *with* Tr. 34 (admitting to prior cocaine use).

Ms. Elliott did inconsistently report the date when she last consumed alcohol; however, this tends to reflect on her memory, rather than on her credibility. At the first hearing, she guessed that she had her last drink seven years earlier, to which the ALJ offered 2002 as the year. Tr. 74. At the second hearing, she first testified that it had been eight to ten years since her last drink, but she and the ALJ then entered into a colloquy during which Ms. Elliott stated that she stopped drinking before her last pregnancy. Tr. 33–34. During this colloquy, Ms. Elliott said that she "drank from the time I was 16, up until two years ago," but this appears to be simply a misstatement because immediately preceding and following that statement she testified that her

OPINION AND ORDER, Page 15

last drink was between eight and ten years ago. *Id.* Ms. Elliott's inability to remember an event that occurred between eight and ten years ago is concerning, but does not cast doubt on her credibility. Further, where inconsistent reports regarding alcohol have been used to discredit a claimant's testimony, the inconsistencies usually have been about whether the claimant is currently using alcohol or how much the claimant is currently using, not quibbles over the exact year of last use. *See Thomas*, 278 F.3d at 959 (9th Cir. 2002) (inconsistent reports about actual use of alcohol and illegal drug was relevant); *Robbins*, 466 F.3d at 889 (dissent found relevant inconsistent reports about *the* amount of drinking, varying between nothing and a case per day) (O'Scannlain, J. dissenting).

Finally, the ALJ cited an inconsistency between Ms. Elliott's testimony—that she lost custody of her child because of her mental impairments—and reality—that she violated a Department of Human Services ("DHS") safety plan. Tr. 17. Although Ms. Elliott might be incorrect in her belief about DHS's reasoning behind the removal of her child, there is no material inconsistently in her testimony. In 2005, when Ms. Elliott was evaluated by Robert Basham, Ph.D., at the request of DHS, she maintained that she knew nothing about the safety plan. Tr. 244. Again, at the hearing, she repeatedly denied knowledge of the safety plan and asserted a belief that DHS found her mentally unfit to care for a child. Tr. 38–41. This is not an inconsistency.

Despite the ALJ's extensive recitation of Ms. Elliott's allegedly inconsistent statements, those cited fail to disparage her credibility. Generally, the ALJ appeared to find inconsistencies by selectively taking statements made by Ms. Elliott out of context, even when they were adequately resolved or explained in a temporally insignificant period. Indeed, a number of

OPINION AND ORDER, Page 16

purportedly inconsistent statements were actually consistent when read in the context of the record.

Thus, the reasons relating to Ms. Elliott's purportedly inconsistent statements offered in support of the ALJ's finding  that Plaintiff is not credible are not supported by substantial evidence in the record. In summary, the ALJ failed to provide clear and convincing reasons, supported by substantial evidence, to discredit Ms. Elliott's testimony.

### C.    Plaintiff's Lay Witness Testimony

Ms. Elliott asserts that the ALJ did not provide germane reasons specific to Ms. Walsh when she found her less than fully credible. "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). The ALJ considered the statement of Ms. Walsh, but gave it little weight because it "generally reflects the same allegations made by the claimant" and "[i]n view of claimant's credibility problems and the record as a whole," the ALJ determined that it was not credible. Tr. 18.

As discussed above, the ALJ erroneously rejected Ms. Elliott's testimony.  Because the only germane reason asserted by the ALJ in rejecting Ms. Walsh's testimony was Ms. Elliott's lack of credibility, the ALJ's conclusion with regard to Ms. Walsh is unsupported in the record. Further, the ALJ's general reference to the "record as a whole" is not sufficiently specific to allow the court to review the ALJ's reasoning. Therefore, the ALJ did not offer an appropriate and germane reason to reject Ms. Walsh's lay testimony.

**D.     Plaintiff's Medical Evidence**

Ms. Elliott also argues that the ALJ failed to provide clear and convincing reasons for giving little weight to the opinions of Dr. Behle and Ms. McAlexander. Pl.'s Br. at 6–10. An ALJ must determine the weight to give each source of evidence. 20 C.F.R. § 416.927(d), (f). Opinions from "acceptable medical sources" may generally be accorded more weight than those from "other sources." *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996); 20 C.F.R. § 416.913. An ALJ may wholly or partially discount the opinion of any source, but the regulations and Ninth Circuit case law establish specific standards that an ALJ must apply in order to do so. *See* 20 C.F.R. § 416.627 (standards for evaluating medical opinions); *Lester v. Chater*, 81 F.3d 821, 830–33 (9th Cir. 1995) (standards for evaluating acceptable medical sources); *Dodrill*, 12 F.3d at 918–19 (standards for evaluating other sources). An ALJ may only reject the opinion of a doctor who has examined a claimant in favor of the differing opinion of a non-examining doctor if the ALJ "gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995). The standard, however, is more exacting if the ALJ seeks to reject a treating physician's uncontradicted opinion. In that instance, the ALJ may only reject the treating physician's opinion if the ALJ provides "'clear and convincing' reasons" for doing so. *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citing *Reddick*, 157 F.3d at 725).

Ms. Elliott has seen Dr. Behle, her treating physician, since at least 2002. *See* Tr. 532. On referral from Dr. Behle, Ms. Elliott began seeing nurse practitioner Ms. McAlexander for psychiatric care in June 2008. Tr. 416, 423. In addition to Dr. Behle and Ms. McAlexander's treatment notes, Ms. McAlexander wrote an opinion letter to the ALJ on February 8, 2010.

Tr. 696. In her opinion letter, Ms. McAlexander recited Ms. Elliott's diagnoses, indicated that

she "rarely [leaves] her home," and opined that "Ms. Elliot[t] is a good candidate for Disability."

*Id.*  On this letter, below the signature block, Dr. Behle wrote: "I agree with this assessment." *Id.*

The ALJ discounted this opinion letter because it did not identify any functional limitations, it

was based substantially on the claimant's own reporting of symptoms without attendant objective

findings, and it was based on a medical record that revealed unquestioned inconsistencies in

Ms. Elliott's self-reporting. Tr. 17.

As an initial matter, it is undisputed that this evidence—offered jointly by Dr. Behle and

Ms. McAlexander—should be given the weight accorded a treating physician. The ALJ refers to

the opinion letter as one generated by "treating providers," and Dr. Behle qualifies as a

supervising treating physician. *See Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996).

Dr. Behle's status as a treating physician is significant because the February 8, 2010 opinion

letter and related treatment notes are the most recent medical evidence and, therefore, should

generally be given the most weight. *See Reddick*, 157 F.3d at 725; *Orn*, 495 F.3d at 631; *see

also* 20 C.F.R. § 416.927.

The ALJ, however, assigned little weight to the opinion letter because it reached a

conclusion—Ms. Elliott was "a good candidate for disability"—without identifying any

functional limitations. Tr. 18. The ALJ's finding takes the language of the letter out of context

because it does include a functional limitation when the letter refers to Ms. Elliott's inability to

"leave her home because of her mood and thought disorder." Tr. 696. Further, although the

Commissioner is correct—the ALJ is the final arbiter of disability—the Ninth Circuit has held

that an ALJ may only reject a physician's opinion on the ultimate issue of disability for clear and

OPINION AND ORDER, Page 19

convincing reasons. *Reddick*, 157 F.3d at 725.[1] Thus, the ALJ erred by discounting the opinion on the grounds that the opinion failed to offer functional limitations. Moreover, the ALJ may not discount Dr. Behle's opinion on the ultimate issue of disability simply for being an opinion on the ultimate issue of disability. *See id.*

The ALJ also gave little weight to the opinion because it was based on Ms. Elliott's discredited subjective complaints. Although this can be a permissible basis upon which to lessen the weight given to a treating physician's opinion, as discussed above, the ALJ's credibility finding was erroneous. Therefore, this reason is not supported by substantial evidence in the record.

The ALJ further criticized the letter from Dr. Behle and Ms. McAlexander because she noted that their treatment notes lacked objective findings sufficient to substantiate their opinion. Tr. 17. The reference to Dr. Behle and Ms. McAlexander's treatment notes earlier in the ALJ's decision falls short of "explain[ing] why [the ALJ's opinion], rather than the doctor['s], [is] correct." *Embrey v. Bowen*, 849 F .2d 418, 421–22 (9th Cir. 1988). Where the ALJ makes reference to objective findings apparently in contravention of the medical opinion offered by

---

[1]  If the opinion of a treating physician is contradicted by another opinion in the record, then the ALJ may discount the contradicted opinion for "specific and legitimate reasons supported by substantial evidence in the record." *Holohan*, 246 F.3d at 1202 (internal quotation and citation omitted). Here, the only apparent conflict with Dr. Behle's opinion would be with the state reviewing physicians, Drs. Hennings and Anderson. Tr. 340–43, 360. Dr. Behle and Ms. McAlexander's opinion was formed more than two years after Drs. Hennings and Anderson completed their review of the record. As such, the opinions of the reviewing physicians are substantially less comprehensive than that of Dr. Behle and Ms. McAlexander, who have had two additional years to observe and treat Ms. Elliott. Thus, the opinion of Dr. Behle and Ms. McAlexander is uncontradicted and may be given less weight only for clear and convincing reasons. *See Regennitter*, 166 F.3d at 1299 (error under either a "clear and convincing" or "specific and legitimate" standard to reject an examining psychologist's report on the grounds that it was contradicted by a less extensive report).

OPINION AND ORDER, Page 20

Dr. Behle and Ms. McAlexander, she does so with an impermissibly selective reading of the record. Tr. 16; *Holohan*, 246 F.3d at 1205 (9th Cir. 2001). The ALJ cites to Dr. Behle's treatments notes from October 2009 through February 2010; it is unsurprising that these records do not contain reference to Ms. Elliott's mental condition because they were made after Dr. Behle referred Ms. Elliott to Ms. McAlexander for psychiatric care in June 2008. *See, e.g.*, Tr. 416, 423, 683–93. Similarly, while the ALJ cites to various records indicating Ms. Elliott was observed to have "full affect, normal speech, no suicidal ideation, and normal thought process," the ALJ ignored coextensive observations indicating that Ms. Elliott had a "very childlike" thought process, "flat affect," and "evasive eye contact." Tr. 424, 686, 691. This selective reading of the treatment notes fails to capture "the context of the overall diagnostic picture." *Holohan*, 246 F.3d at 1205. In addition, "that a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace." *Id.*

Because the ALJ failed to consider the entirety of the physician's treatment notes, she erroneously rejected a supported opinion. A complete reading of the record demonstrates support for the opinion of Dr. Behle and Ms. McAlexander. *E.g.*, Tr. 424, 431, 447, 483–89, 524–31, 686, 691; *see also The Diagnostic and Statistical Manual of Mental Disorders*, § 300.21, at p. 435 (Am. Psychiatric Ass'n 4th ed.) (1994) ("No laboratory findings have been identified that are diagnostic of Panic Disorder."). Thus, the ALJ's assertion that Dr. Behle and Ms. McAlexander's opinion was unsupported by objective findings is not supported by substantial evidence in the record.

The ALJ's final reason for giving little weight to the opinion of Dr. Behle and Ms. McAlexander was their failure to reconcile Ms. Elliott's apparently inconsistent statements about her living situation and their failure to inquire further into a single diluted urinalysis sample. Tr. 17. On December 18, 2009, Ms. McAlexander noted that Ms. Elliott "complains she is rarely leaving her house"; yet, during that same visit, she reported "living with her daughter and in a car." Tr. 687–88. An ALJ may consider an "actual inconsistency" between a medical source's opinion and the relevant treating notes when assigning a weight to that opinion. *See Holohan*, 246 F.3d at 1205 (9th Cir. 2001).

Here, the inconsistency in the way Ms. Elliott describes her living situation does not create a conflict between the opinion and the notes. Whether Ms. Elliott describes her domicile as a home or a van, it is irrelevant to the attendant functional limitation—her extreme difficultly leaving that residence. Tr. 687–88, 696. Further, the medical notes "read in [the] context of the overall diagnostic picture" demonstrate that Ms. Elliott had reported her fear of leaving her residence on numerous occasions, regardless of whether she lived in an apartment or a van. *See Holohan*, 246 F.3d at 1205; *e.g.* Tr. 416, 684, 687, 690.

The ALJ also cites Dr. Behle's failure to "follow up after the claimant provided the unlikely explanation that a urine test did not show methadone because the urine sample was too diluted due to her drinking too much." Tr. 17. It is not apparent how this is relevant to the weight accorded to an opinion of a treating physician; however, if the ALJ cited it as indicia of Dr. Behle's and Ms. Alexander's acceptance of Ms. Elliott's reporting without question, then it demonstrates the opposite. For many years, Ms. Elliott has been taking methadone for chronic pain under the supervision of Dr. Behle. *See, e.g.*, Tr. 420 (Dr. Behle noted "[p]atient has been

OPINION AND ORDER, Page 22

seen almost monthly for years and we have had no red flag behaviors"). It is indicative of Dr. Behle's trust in Ms. Elliott that she renewed her prescription for methadone, despite the apparent violation of the pain management agreement. Tr. 689–90.

For all of these reasons, the ALJ's decision to give the opinion of Dr. Behle and Ms. McAlexander "little weight" is neither supported by clear and convincing reasons nor based on substantial evidence in the record.

**E.    Remand**

The court may, in its discretion, order an immediate payment of benefits. In "Social Security Act cases Congress has granted district courts the additional power to reverse or modify an administrative decision without remanding the case for further proceedings." *Harman v. Apfel*, 211 F.3d 1172, 1177–78 (9th Cir. 2000). The Ninth Circuit has set forth a three-part test for determining whether to remand a case for further proceedings or for the immediate award of benefits. The immediate payment of benefits is appropriate where:  (1) the ALJ failed to provide legally sufficient reasons for rejecting the claimant's testimony; (2) no outstanding issues remain for the ALJ to resolve; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such testimony credited. *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004).

As discussed above, the ALJ erroneously relied on the testimony of the VE, improperly discounted Ms. Elliott's testimony, improperly discounted Ms. Walsh's lay witness testimony, and erroneously gave the opinion of Dr. Behle and Ms. McAlexander little weight. The ALJ's subsequent RFC assessment and hypothetical questions to the vocational expert at step four in the sequential disability analysis are therefore not based upon the proper legal standards.

OPINION AND ORDER, Page 23

It is not clear, however, from the record that crediting the omitted evidence will establish that Ms. Elliott is disabled at step five in the sequential proceedings. Although the testimony establishes that Ms. Elliott is limited in her ability to function outside the confines of her residence, there is substantial evidence that her confinement is not absolute, which would likely render her disabled at step five. Ms. Elliott testified to leaving her van to visit acquaintances in order to shower, to visit her various medical practitioners, and to spend several months in her brother's house in Las Vegas. Tr. 44–46, 78. It would appear as though Ms. Elliott suffers decreased anxiety when she is in a location, other than her van, familiar to her. *E.g.*, *id.*; Tr. 414 (anxiety increased in specific areas). Because the VE did not opine as to the availability of jobs sensitive to Ms. Elliott's psychological restrictions, the Court has no basis to conclude that Ms. Elliott is disabled.[2]

Thus, outstanding issues must be resolved before a determination that an award of benefits is inappropriate. Accordingly, the court declines to credit the improperly omitted testimony. *Luna*, 623 F .3d at 1035. The matter must be remanded for further proceedings to address the indicated testimony. If necessary, the ALJ must then revise her RFC determination. Finally, the ALJ must make adequate step four and five findings, incorporating any revised determinations.

---

[2]  The VE did opine that if a hypothetical claimant's psychological problems—including depression, anxiety, and memory problems—caused her to miss more than two days of work every month, then that claimant would not be able to sustain competitive employment. Tr. 55. None of the erroneously discredited or omitted testimony, however, establishes that Ms. Elliott would miss more than two days of work per month due to those psychological conditions.

OPINION AND ORDER, Page 24

## IV.    CONCLUSION

For the reasons stated above, the Commissioner's decision that Mrs. Elliott is not

disabled is REVERSED and this case is REMANDED for further proceedings consistent with

this opinion pursuant to 42 U.S.C. § 405(g), sentence four.

DATED this 4th day of September, 2012.


/s/ Michael H. Simn
Michael H. Simon
United States District Judge

OPINION AND ORDER, Page 25